UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOCORRO MAYA (R33278), ) | |
| ) | |
| Petitioner, ) | Case No. 17 C 4056 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| ALEX JONES, Acting Warden, ) | |
| Menard Correctional Center, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Socorro Maya, a prisoner incarcerated at the Menard Correctional Center, brings this *pro se* habeas corpus action under 28 U.S.C. § 2254 challenging his 2004 convictions for predatory criminal sexual assault of a child from the Eighteenth Judicial Circuit Court, DuPage County, Illinois. The Court denies the petition on the merits, and declines to issue a certificate of appealability.

**I.    Background**

The Court draws the following factual history from the state court record. *See* Dckt. No. 12. State court factual findings have a presumption of correctness, and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 n.8 (2015) (citing 28 U.S.C. § 2254(e)(1)). Petitioner has not done so.

Petitioner sexually assaulted[1] his daughter, J.M., multiple times between March 2001 and

---

[1] In Illinois, predatory criminal sexual assault of a child, 720 ILCS 5/11-1.40, Petitioner's crime of conviction, is a different crime than aggravated criminal sexual abuse of a child. 720 ILCS 5/11-1.60. Consequently, the Court refers to Petitioner's conduct as sexual assault, not sexual abuse, throughout this opinion in accordance with the Illinois statute.

April 2002. *Illinois v. Maya*, No. 2-04-0976 (Ill. App. Ct. Oct. 25, 2007) (Dckt. No. 12-1, at 1). J.M. testified against Petitioner at his bench trial in October 2003. *Id.* at 2. She was 13 years old during the trial. *Id*. J.M. offered testimony that is difficult to read, and undoubtedly traumatic to experience. She explained that Petitioner first assaulted her when she was eleven years old, and a student in the fifth grade. *Id*. at 2–3.

J.M. testified about the first time her father assaulted her. *Id*. at 3. Petitioner called her up to his bedroom to discuss a letter he received from J.M.'s school. *Id*. He told her that the letter said that J.M. was hugging and kissing boys at lunch time. *Id*. Petitioner told her that she should not let boys touch her. *Id*. J.M., for her part, tried to tell her father that the letter said nothing of the sort. *Id.* Instead, as J.M. tells it, the letter said that she was doing poorly in school. *Id.*

Petitioner then began touching J.M. and instructed her to take off her shirt and bra. *Id*. He placed his hand under her underwear and put his finger in her vagina. *Id*. Petitioner instructed J.M. not to tell anyone about the sexual assault. *Id*. J.M. could not recall the date that the first assault occurred. *Id*.

J.M. recalled Petitioner placing his fingers in her vagina only during the first incident. *Id*. at 5. But the assaults continued. J.M. testified that Petitioner assaulted her again two or three weeks later, placing his mouth on her vagina and touching her breasts. *Id*. at 3–4. A week later, on a Saturday or Sunday when no one else was home, Petitioner penetrated the victim's vagina with his penis. *Id*. at 4. J.M. testified that Petitioner would regularly engage in intercourse with her once or twice a week while she was in sixth grade. *Id*. Petitioner would ejaculate onto J.M.'s abdomen when engaging in intercourse. *Id*.

On average, he engaged in cunnilingus with her once a month, and intercourse once or twice a week. *Id*. at 5. J.M. testified that the assaults generally occurred on the weekends. *Id*.

J.M. spoke to a Department of Children and Family Service (DCFS) investigator around her spring break in 2002, when she was in sixth grade. *Id*. The DCFS investigator informed the police, who interviewed J.M. *Id*. at 7. J.M. told the police that Petitioner sexually assaulted her. *Id*. at 8. Petitioner stopped assaulting J.M. after she spoke to the DCFS investigator and the police. *Id*. at 5.

On May 21, 2002 – soon after J.M. reported the sexual assault – Dr. Brian Stratta examined her. *Id.* at 9. Dr. Stratta, who serves as medical director of a care clinic, testified at the bench trial. *Id.* He explained that the clinic had experience examining and treating children who were sexually abused. *Id*. at 9. Dr. Stratta's examination revealed that J.M. had no hymenal tissue. *Id*. Based on this finding, Dr. Stratta concluded that J.M. had experienced sexual trauma. *Id*. Dr. Stratta testified that his examination revealed that J.M.'s injuries were more than two or three weeks old, and she did not have signs of recent sexual trauma. *Id*. He could not say for sure how many times she had been sexually assaulted. *Id.*

A few weeks later, on June 4, 2002, J.M. recanted her earlier statements. *Id.* at 5–6, 10, 11. She signed an affidavit at defense counsel's law office. *Id.* at 10. In her affidavit, she recanted the allegations against Petitioner. Instead of the sexual assault she initially described, she said that she had sex with an unnamed male peer. *Id*. at 11.

When she recanted her assault claims, J.M. wasn't alone with the defense attorney. She was joined by three others: her mother; a retired police detective who worked as an investigator for the defense attorney; and a translator, who translated the conversation into Spanish for J.M.'s

3

mother. *Id*. at 10. Both the investigator and translator testified at trial that J.M. appeared to sign the affidavit voluntarily. *Id*. But J.M. repudiated the affidavit at trial. She stated that it was false. J.M. explained that her mother encouraged her to sign it so Petitioner could get out of jail. *Id*.

The victim's mother – and the Petitioner's wife – testified at trial that Petitioner was rarely home. Indeed, she testified that he worked at a landscaping business every day of the week, Monday through Sunday, from 5:30 a.m. to 9:00 p.m. *Id*. at 9. Petitioner's wife wasn't home much either. She worked in the housekeeping department of a local hotel, which required her to sometimes work on the weekends. *Id*.

After a bench trial, the trial court found Petitioner guilty. As the trial court reasoned, the medical testimony established that J.M. had suffered likely penetration. And the trial court found J.M.'s trial testimony against Petitioner credible. *Id*. at 12. The trial court reasoned that J.M.'s testimony describing the sexual assaults that she experienced far exceeded the knowledge of a 13-year-old child who had not been sexually assaulted. Her testimony suggested to the trial court that she was truthful when recounting her experiences.

True, the court noted that there were "minor contradictions" between her trial testimony and prior statements to investigators. But the court still found her overall testimony credible. *Id*. To bolster its findings, the court also pointed out that J.M. had no reason to lie at trial. There was no evidence of divorce proceedings between her parents; no custody issues; and no evidence of any hatred between J.M. and Petitioner prior to the sexual assaults and trial. *Id*.

The recantation wasn't enough to change the court's mind, either. The trial court noted that J.M repudiated her prior recantation given to Petitioner's defense attorney – effectively, she

4

recanted her recantation. *Id.* She testified that she recanted her statements because her mother was unhappy about Petitioner being in jail. *Id.* J.M. explained that her mother was "unhappy" with the family suffering that resulted from Petitioner's incarceration. *See id.* J.M.'s mother and uncle (Petitioner's brother) both told her to forget about the sexual assaults so that the family could "be put back together." *Id.* J.M.'s mother told J.M. that God would punish Petitioner for what he did. *Id.*

The trial court concluded the initial recantation was suspect because of the pressures exerted by J.M.'s family. *Id.* The trial court also rejected the attempt to link the medical evidence of J.M.'s sexual contact to a boy she dated in 2003. *Id.* After all, her examination in 2002 occurred a full year before this alleged sexual contact in 2003. *Id.*

But the court did not find Petitioner guilty on all counts. The trial court acquitted Petitioner on charges alleging sexual assaults during the summer months between J.M.'s fifth and six grade school years. On the stand, J.M. testified that the assaults did not occur when she was on summer vacation. In light of that evidence, the trial court acquitted Petitioner of the charges that allegedly occurred during the summer months. *Id.* at 13.

Ultimately, the court sentenced Petitioner to 54 years in prison. *Id.* The convictions and sentence were affirmed on direct appeal. *Id.* at 19. Then, the state court rejected Petitioner's postconviction petition. *Illinois v. Maya*, 2016 IL App (2d) 150624-U (Ill. App. Ct. Mar. 29, 2016). Now, Petitioner brings the present habeas corpus petition. *See* Dckt. No. 1.

II.    Analysis

    A.    **Claim One**

Petitioner challenges the sufficiency of the evidence supporting his convictions. The trial court explained in its findings of fact that J.M. did not have a "facility for dates or period of time" when she testified. *See* Dckt. No. 12-1, at 10. On the other hand, the indictment detailed the specific date ranges when the sexual assaults occurred. Petitioner argues that J.M.'s failure to identify the particular dates, along with the other inconsistencies in her testimony, demonstrates that there is insufficient evidence to support his convictions.

Petitioner also points out that the trial court acquitted him on the counts that alleged that he sexually assaulted J.M. during the summer months because J.M. testified that she was not assaulted while on summer vacation from school. Likewise, Petitioner argues that there is insufficient evidence to support his existing convictions because there is no evidence establishing the time frame for the sexual assaults.

Respondent, for its part, argues that the claim is both procedurally defaulted and meritless. Respondent is right.

"To obtain federal habeas review, a state prisoner must first submit his claim through one full round of state-court review." *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009) (citing *Picard v. Connor*, 404 U.S. 270, 275–76 (1971)); *see also* 28 U.S.C. § 2254(b)(1). To satisfy this requirement, the Petitioner "must have fairly presented the substance of [his] claims to the state courts by articulating both the operative facts and applicable law that [he] claims entitle [him] to relief." *Id.* (citing *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006)). The full round of state-court review includes presenting the claims in a petition for leave to appeal (PLA)

6

before the Supreme Court of Illinois. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-46 (1999)). The prisoner must fairly present the controlling law and operative facts to sufficiently alert the state court of his federal claim. *Hicks v. Hepp*, 871 F.3d 513, 530 (7th Cir. 2017) (citations omitted) ("For a claim to be "'fairly presented,' the petitioner must place before the state court both the controlling law and the operative facts in a manner such that 'the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve the issue on that basis.'").

Petitioner's direct appeal was initially dismissed for lack of jurisdiction by the Appellate Court of Illinois. *See Illinois v. Maya*, No. 2-04-0976 (Ill. App. Ct. Oct. 6, 2006); *see also* Dckt. No. 12-1, at 20. Petitioner then filed a *pro se* PLA raising the sufficiency of the evidence claim (among others). *See* Dckt. No. 12-1, at 26. The Supreme Court of Illinois did not address the merits of the PLA. Instead, the Supreme Court issued a supervisory order vacating the appellate court's dismissal, reinstating the appeal, and ordering the appellate court to consider the appeal on the merits. *Illinois v. Maya*, No. 104348, 866 N.E.2d 1176 (Ill. May 31, 2007) (Mem.).

After remand, the state appellate court adjudicated Petitioner's sufficiency of the evidence claim. *Illinois v. Maya*, No. 2-04-0976 (Ill. App. Ct. Oct. 25, 2007) (Dckt. No. 12-1, at 1.). But Petitioner failed to bring a PLA following the appellate court's merits ruling.

To exhaust a claim, Petitioner must "give the state courts a full and fair opportunity to resolve federal claims" through "established appellate review procedures," including a PLA before the Supreme Court of Illinois. *Boerckel*, 526 U.S. at 845. True, Petitioner presented his claim in his original appellate appeal. But the Supreme Court of Illinois vacated the appellate court's procedural dismissal and remanded to that court for merits review of Petitioner's appeal.

The remand started the process all over again. That is, the Supreme Court's vacating order restored the status quo, and the parties were back where they started. *See Puente v. Chandler*, 2014 WL 1318675, at *14 (N.D. Ill. 2014). Once the appellate court denied Petitioner's claim on remand, he had the same duty to file a PLA with the Supreme Court, challenging the appellate court's decision. *See id*. Because he failed to do so, his claim is procedurally defaulted. *See Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004) (instructing that prisoner must present claims to correct state court at the proper time to meet the fair presentment requirement for exhaustion).

The case law carves out some exceptions that might allow Petitioner to side-step the exhaustion requirement. But here, Petitioner cannot excuse his defaults through either cause and prejudice, nor fundamental miscarriage of justice.

To excuse a procedural default for cause, the petitioner must demonstrate both cause for the default *and* prejudice resulting from that cause (that is, "the errors worked to the petitioner's *actual* and substantive disadvantage"). *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004)). Cause is an "'objective factor, external to Petitioner that impeded his efforts to raise the claim in an earlier proceeding.'" *Weddington*, 721 F.3d at 465 (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). Examples of cause include: (1) interference by officials making compliance impractical; (2) the factual or legal basis was not reasonably available to counsel; or (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)).

Petitioner argues that cause applies. He identifies personal circumstances, as an illiterate Hispanic who does not read or write English, that made it difficult to file the PLA. *See* Dckt. No 20, at 3. He also points to prison policies limiting access to the law library and legal materials. But it's hard to see how Petitioner's own illiteracy could qualify as an "objective factor, external to Petitioner" (which is required for cause). *See Weddington*, 721 F.3d at 465. Either way, Petitioner cannot demonstrate that his illiteracy and alleged lack of legal materials were the cause of his failure to file the PLA.

Plus, Petitioner has overcome these obstacles before. For one thing, he filed the *pro se* PLA after the appellate court's dismissal of his case on direct appeal. *See* Dckt. No 12-1, at 26. He has also filed *pro se* material before this Court. These prior acts suggest Petitioner can file a PLA. It makes little sense to suggest that Petitioner was able to file his original PLA *pro se* – which successfully led to a remand – but then find that his illiteracy and lack of legal materials kept him from filing a second PLA. If he filed the first one, he could have filed the second one. Petitioner did not lose the ability to file *pro se*. Petitioner has failed to advance an argument that would support a finding that he failed to exhaust for cause.

With cause ruled out, one more option exists to excuse Petitioner's default: the fundamental miscarriage of justice, or actual innocence. *See Weddington,* 721 F.3d at 465. To show actual innocence, Petitioner must demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggins v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). It is a "demanding" and "seldom met" standard. *McQuiggins*, 569 U.S. at 386 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). To meet it, Petitioner must present new, reliable

9

evidence that was not presented at trial – like exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – to make a credible claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see McDowell v. Lemke*, 737 F.3d 476, 483–84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'")).

Petitioner cannot demonstrate actual innocence. The medical testimony showed that J.M. had experienced sexual contact, and J.M. testified that Petitioner sexually assaulted her. The finder of fact at trial believed J.M. That credibility determination stands. Federal courts cannot reexamine witness credibility in a habeas corpus proceeding. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). J.M.'s testimony that Petitioner sexually assaulted her is sufficient to support the conviction. *Hayes*, 403 F.3d at 938 ("[I]t is black letter law that testimony of a single eyewitness suffices for a conviction even if 20 bishops testify that the eyewitness is a liar.").

Even if it were not procedurally defaulted, the claim is meritless. The claim is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). The Court's review is of the state appellate court opinion on direct appeal because that was the last state court to resolve the claim on the merits. *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (citing *Green v. Fisher*, 565 U.S. 34, 40 (2011); *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006)).

Under the AEDPA, the Court may not grant habeas relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court of the United States, or the state court decision is based on an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d). "The AEDPA's standard is intentionally 'difficult for Petitioner to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). This "'highly deferential standard [] demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

The Court's applies a "twice-deferential standard" in reviewing the state court's ruling on the sufficiency of the evidence claim. *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). First, the Court must defer to the verdict. "'[I]t is the responsibility of the [finder of fact] – not the court – to decide what conclusions should be drawn from evidence admitted at trial.'" *Parker*, 567 U.S. at 43 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker*, 567 U.S. at 43 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). Second, the Court defers to the state court ruling under the AEDPA. *See* 28 U.S.C. § 2254(d).

A person commits predatory criminal sexual assault of a child if the accused (1) is over 17 years of age, (2) commits an act of sexual penetration of the victim, and (3) commits this act when the victim is under the age of 13. *Illinois v. Kitch*, 942 N.E.2d 1235, 1241 (Ill. 2011); 720 ILCS 5/11-1.40. "'Sexual penetration' means any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, or

11

any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including, but not limited to, cunnilingus, fellatio, or anal penetration." 720 ILCS 5/11-0.1. Although medical evidence was presented in this case, it is not required for sustaining a conviction. *See Illinois v. Alcantar*, 2018 IL App (1st) 162771-U, ¶ 20.

The evidence at trial established that Petitioner was over the age of 17 when he engaged in sexual penetration with the victim, who was under the age of 13. J.M.'s testimony is sufficient evidence to support the conviction. And the state trial court, as the finder of fact, was within its province to believe J.M.'s testimony. The Court has no authority to reject the finder of fact's determination crediting J.M's testimony. *Marshall*, 459 U.S. at 434.

Petitioner, instead, focuses on J.M.'s failure to testify to the specific dates that the assaults occurred. But the date that the sexual assaults occurred is not an element of the offense. The statute did not require the victim to keep a calendar. The prosecution was not required to prove that the sexual assaults occurred on a specific date, as long as the prosecution charged Petitioner with the offenses within the statute of limitations period. *Illinois v. Barnett*, 2018 IL App (2d) 170248-U, ¶ 47; *Illinois v. Letcher*, 899 N.E.2d 315, 320 (Ill. App. Ct. 2008); *cf. United States v. Dickerson*, 705 F.3d 683, 694 (7th Cir. 2013) (applying same principle in federal criminal prosecution).

Petitioner was arrested in May 2002, and indicted in June 2002. *See* Dckt. No. 12-2, pg. 41. Petitioner was indicted within the statute of limitations period in effect at that time. *See* 720 ILCS 5/3-6(i) (West 2002); *Illinois v. Aguayo*, 2012 IL App (1st) 112193-U, ¶ 22

("Effective January 1, 2000, the statute of limitations . . . was extended to allow those prosecutions be commenced within 10 years of the victim's eighteenth birthday.").[2]

J.M.'s failure to remember the specific dates of the sexual assaults in her testimony is only relevant to the extent that it reflects upon her credibility. *See Barnett*, 2018 IL App (2d) 170248-U, ¶ 47. The trial court, as a finder of fact, considered J.M.'s inability to recall specific dates, but ultimately decided that she was a credible witness. The court relied on other factors, like her extensive knowledge of sexual activity that a child her age should not know, her lack of any motive to accuse Petitioner, and the overall consistency between her prior statements to investigators and her trial testimony. *See* Dckt. No. 12-1, at 12. The Court has no license to reject the finder of fact's credibility determination. *Marshall*, 459 U.S. at 434.

There is sufficient evidence to support Petitioner's convictions, and the state appellate court's rejection of this claim is neither contrary to, nor an unreasonable application of, clearly established federal law. Claim One is denied.

### B. Claim Two

Petitioner next argues that his trial counsel was ineffective for failing to assert a violation of the speedy trial provision of the Illinois Code of Criminal Procedure, 725 ILCS 5/103-5(b). He makes a companion argument about his appellate counsel, arguing that his attorney provided ineffective assistance by failing to raise trial counsel's performance on direct appeal.

The state courts addressed and rejected these arguments during Petitioner's postconviction proceedings. The last state court ruling on the merits is from the Appellate Court of Illinois, *Illinois v. Maya*, 2016 IL App (2d) 150624-U (Dkt. 12-2, pg. 126), which is the

---

[2] In 2017, Illinois eliminated the statute of limitations period completely for a number of sexual assault and abuse crimes including predatory criminal sexual assault of a child. *See* 720 ILCS 5/3-6(j)(1).

13

decision the Court reviews under the AEDPA. *See* 28 U.S.C. § 2254(d).

The Court starts with a presumption that state courts resolve appeals on the merits. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Here, the state appellate court discussed the ineffective assistance of counsel issue in a four-page order. *See* Dckt. No. 12-2, at 126–29. The state appellate court addressed the issue in the context of granting a motion for leave to withdraw filed by Petitioner's appointed counsel under *Pennsylvania v. Finley*, 481 U.S. 551 (1987). But the fact that the court resolved two issues in one order, and killed two birds with one stone, does not make a difference. The key point is that the state court resolved the ineffective assistance of counsel issue on the merits.

An ineffective assistance of counsel argument is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, Petitioner must show two things: deficient performance and prejudice. *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The Court's review under *Strickland* is deferential, and applying *Strickland* under the AEDPA (which itself also requires deference) results in a double level of deference to the state court determination. *Knowles*, 556 U.S. at 123.

The substance of Petitioner's argument – that is, the conduct that Petitioner says amounted to ineffective assistance – fails. As the Court explains below, even if his counsel should have raised the issue, Petitioner was not prejudiced by his trial counsel's failure to raise the speedy trial provision.

As background: Petitioner was on bail before trial. Illinois's statutory speedy trial requirement mandated that he be brought to trial within 160 days from the time he made his demand. *Illinois v. Maya*, 2012 IL App (2d) 101325-U, ¶¶ 18–19; 735 ILCS 5/103-5(b). The

14

state appellate court concluded that more than 160 days ran against the speedy trial period. *Maya*, 2012 IL App (2d) 101325-U, 2012 WL 6967072 at *6.

At first blush, it looks like defense counsel should have made a speedy trial argument. But there is more to the story. The state court *also* recognized an exception that would have rendered a speedy trial argument toothless. The prosecution was unable to obtain material evidence from its medical expert, who was unable to make the original trial date because he was out of the country on business. In light of the delay, the prosecution could have excluded 60 days from the speedy trial calculation. *Maya*, 2016 IL App (2d) 150624-U at slip. pg. 2–3 (Dckt. No. 12-2, at 127–28); 725 ILCS 5/103-5(c). That is, if Petitioner had raised a speedy trial challenge, the prosecution had an easy response, and could have excluded 60 days due to the unavailability of its witness. *Id*. That exclusion would have brought the speedy trial period within the required 160-day period. *Id.*

Petitioner did not suffer prejudice from his attorney's failure to raise the speedy trial issue. *Id*. If his attorney had placed the issue on the table, the government had a response that would have taken the issue off the table. On those grounds, the state appellate court rejected the *Strickland* argument and granted the *Finley* motion. *Id*.

The state court rested its decision on state law, and the state court's conclusion on a question of state law is binding upon this Court. *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016) ("A federal court cannot disagree with a state court's resolution of an issue of state law.") (citing *Bradshaw v. Richey*, 546 U.S. 72 (2005); *Estelle v. McGuire*, 502 U.S. 62 (1991)). So, Petitioner cannot demonstrate prejudice under *Strickland*. *Harper v. Brown*, 865 F.3d 857, 861 (7th Cir. 2017). The state court's rejection of Petitioner's ineffective assistance of trial counsel

claim is not contrary to, nor an unreasonable application of, *Strickland*.

Because the ineffective assistance claim against Petitioner's trial counsel is meritless, Petitioner's appellate counsel had no obligation to raise it. Petitioner's ineffective assistance of appellate counsel argument thus fails. *Robertson v. Hanks*, 140 F.3d 707, 712 (7th Cir. 1998) (instructing that appellate counsel is not ineffective for failing to raise a meritless issue on appeal). Claim Two is denied.

### C. Claim Three

Finally, Petitioner argues that his trial counsel barred him from testifying on his own behalf at trial. The Seventh Circuit recently reiterated that an "ineffective assistance of counsel claim is the appropriate vehicle in which to allege that counsel violated a defendant's right to testify." *Hartfield v. Dorethy*, 949 F.3d 307, 312 (7th Cir. 2020) (citations omitted).

Respondent argues that this claim is procedurally defaulted because Petitioner raised it to the state trial court only in the postconviction proceeding. Petitioner did not raise the claim on appeal or in the postconviction PLA. *See* Dckt. No. 12-3, at 2, 68. Respondent is correct.

The failure to raise a claim to all levels of the Illinois courts results in a procedural default. *Boerckel*, 526 U.S. at 838, 842–46. And, as explained in Claim One, Petitioner cannot excuse his default through either cause and prejudice, or the fundamental miscarriage of justice exceptions.

Beyond the default, the claim is meritless. The state trial court resolved the issue on the merits in the postconviction proceedings. *See* Dckt. No. 12-6, at 223. At an evidentiary hearing on the postconviction petition, the trial court heard testimony from Petitioner and his trial attorney. *Id*. The trial attorney, who was an experienced defense attorney, explained that it

16

was his practice to always inform a defendant of his right to testify. *Id.* at 222. On the other hand, Petitioner asserted that the attorney barred him from testifying. *Id*. The trial court identified the issue as one of credibility, and credited the defense attorney's testimony. *Id*. at 224.

The trial court's factual finding is entitled to the presumption of correctness, and Petitioner does not rebut the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Brumfield*, 135 S. Ct. at 2282 n.8. The state trial court's unrebutted factual finding dooms his ineffective assistance of counsel argument because he cannot demonstrate deficient performance by his attorney under the *Strickland* standard.

Petitioner also cannot demonstrate prejudice. He states that he would have testified that J.M. was lying about the sexual assaults. Dckt. No. 1, at 37. However, the Court fails to see how Petitioner's testimony that J.M. was allegedly lying would meet *Strickland's* prejudice standard of a reasonable probability that *but for* defense counsel's alleged refusal to allow Petitioner to testify, the outcome of the trial would have been different. *See Freeman v. Chandler*, 645 F.3d 863, 869 (7th Cir. 2011).

The trial court, as the finder of fact, explained that there was independent medical evidence that J.M. had experienced sexual activity. The court found that she had sexual knowledge far beyond what was expected for her youth. The court also found that she had no motive to lie such as a divorce, custody proceeding, or history of conflict with Petitioner. The facts supported her testimony. In sum, the finder of fact decided that J.M. was telling the truth in reaching its guilty verdict. Petitioner testifying that J.M. was lying would have had no impact on the case. Claim Three is denied. The habeas corpus petition is denied on the merits.

17

### III. Certificate of Appealability and Notice of Appeal Rights

The Court declines to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate this Court's decision. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## IV.  Conclusion

Petitioner's habeas corpus petition [1] is denied on the merits. Any pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to: (1) terminate Respondent Lashbrook from the docket; (2) add Petitioner's present custodian, Alex Jones, Acting Warden, Menard Correctional Center, as Respondent; and (3) enter a judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

Date: July 13, 2020

Steven C. Seeger
United States District Judge